2014 Ark. App. 405

**Songa WIMBLEY, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CR–14–60.**

Court of Appeals of Arkansas.

June 18, 2014.

Potts Law Office, Monticello, by: Gary W. Potts, for appellant.

Dustin McDaniel, Att'y Gen., by: Ashley Argo Priest, Ass't Att'y Gen., for appellee.

PHILLIP T. WHITEAKER, Judge.

Appellant Songa Wimbley appeals a Jefferson County Circuit court conviction of second-degree battery, contending that the State failed to prove that a deadly weapon was used in the commission of the offense. Because we find that the bat used by Wimbley's accomplice constitutes a deadly weapon, we affirm.

On July 8, 2012, Yuwanda Pitts Johnson was working at the Ramada Inn in Pine Bluff when she became involved in an altercation with Songa Wimbley; Wimbley's sister, Stacy Dilworth–Wimbley; and a third woman. The altercation occurred because Johnson and Dilworth–Wimbley were at odds over Dilworth–Wimbley's boyfriend, who was the father of Johnson's children. The incident began in the laundry room when Johnson was approached by Wimbley. According to witnesses for the State, Wimbley stated to Johnson, "We are not going to even talk anymore about it. I'm fixing to stun you with the stun gun." When Wimbley started to approach her with the stun gun, Johnson threw chemicals at her. At this point, Wimbley ran from the laundry room, and Johnson went to the lobby.

Johnson and another employee then attempted to close the front doors to the hotel. While they were trying to close the doors, Wimbley returned with Dilworth–Wimbley and began kicking the doors, trying to enter. During the altercation, Wimbley possessed a stun gun and Dilworth–Wimbley possessed a bas ball bat. Dilworth–Wimbley swung the bat and struck Johnson in the hand, fracturing it. Wimbley also shocked Johnson on her hand with the stun gun, and tried to use the stun gun on her neck, but was unsuccessful. Johnson did not receive any injuries to her neck from the stun gun, but could feel the vibration of the gun as it was aimed at her head. Wimbley denied having a stun gun and insisted that she never touched Johnson. She stated that she never saw anyone stun Johnson or hit her with a bat.

The jury was instructed on the elements of the offense as well as on accomplice liability. The verdict form submitted to the jury did not differentiate between the types of culpability. The jury returned a verdict of guilty to second-degree battery.

Wimbley appeals her conviction, arguing that the trial court erred in denying her motions for a directed verdict on the basis that there was no proof that the items used in the altercation (the bat and the stun gun) were deadly weapons for purposes of the second-degree battery statute.

A motion for a directed verdict is a challenge to the sufficiency of the evidence. *Farrelly v. State,* 70 Ark.App. 158, 15 S.W.3d 699 (2000). The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, which is evidence of such certainty and precision to compel a conclusion one way or another. *Id.* We review the evidence in the light most favorable to the appellee, considering only the testimony that tends to support the verdict. *Id.*

A person commits battery in the second degree if with the purpose of causing physical injury to another person, the person causes physical injury to any person by means of a deadly weapon other than a firearm. Ark.Code Ann. § 5–13–202(a)(2) (Supp.2011). Arkansas Code Annotated section 5–1–102(4) (Supp.2011) defines a deadly weapon as:

> (A) A firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious physical injury; or
>
> (B) Anything that in the manner of its use or intended use is capable of causing death or serious physical injury.

"Serious physical injury" means physical injury that creates a substantial risk of death or that causes protracted disfigurement, protracted impairment of health, or loss or protracted impairment of the function of any bodily member or organ. Ark. Code Ann. § 5–1–102(21). Wimbley argues that the baseball bat used in the altercation was not a deadly weapon.[1] She contends that a bat is not designed for the purpose of inflicting death or serious physical injury and that, because the blows were inflicted to the victim's hand and not her head, it was not used in a manner intended to cause serious physical injury or death. As such, she argues that it was not a deadly weapon for purposes of the statute.

Her argument is without merit. A bat can clearly be used in a manner capable of causing death or serious physical injury.

While Wimbley is correct that a bat is not specifically designed for the purpose of inflicting death or serious physical injury, the manner in which it was used in this instance—the swinging of a bat at Johnson with the intent to strike her—very well could cause death or serious physical injury, regardless of the part of the body at which the blows were directed. There was evidence at trial that Dilworth–Wimbley was swinging the bat constantly during the altercation, and in fact, struck Johnson in the hand with enough force to fracture it. The jury could have easily believed that the reason Johnson sustained damages only to her hand was the fact that the doors were in the way, preventing strikes to the rest of her body and head. Because there was evidence that Wimbley's accomplice caused injury to Johnson using a deadly weapon, and because the jury was instructed on accomplice liability, there was sufficient evidence presented to support Wimbley's second-degree battery conviction.

Additionally, because we find that Wimbley's conviction is supported on the theory of accomplice liability, we need not address her argument that a stun gun is not a deadly weapon for purposes of the statute.

Affirmed.

GLOVER and GRUBER, JJ., agree.

---

1. Although, Wimbley did not wield the bat during the altercation, the jury was instructed as to accomplice liability. The law in Arkansas makes no distinction between the criminal liability of a principal and an accomplice. Ark.Code Ann. § 5–2–402(2) (Repl.2006); *Winters v. State,* 2013 Ark. 193, 427 S.W.3d 597. Our supreme court has held that under the accomplice-liability statute, a defendant may properly be found guilty not only of his own conduct but also the conduct of his accomplice. *Purifoy v. State,* 307 Ark. 482, 822 S.W.2d 374 (1991). When two or more persons assist one another in the commission of a crime, each is an accomplice and criminally liable for the conduct of both. *Id.* Thus, Wimbley is liable for the actions of her accomplice, Dilworth–Wimbley, who used the bat during the altercation.